IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
NOVEMBER 7, 2001 Session

## MICHAEL DELANEY GALLIGAN v. LINDA MEDDERS GALLIGAN

Direct Appeal from the Chancery Court for Warren County
No. 7069; The Honorable Robert Corlew, Judge

––––––––––––––

No. M2001-00619-COA-R3 - Filed April 30, 2002

––––––––––––––

This appeal arises from a divorce proceeding initiated by the husband. The trial court, holding that both parties contributed to the demise of the marriage, granted the divorce to the wife based on the husband's adultery. The trial court refused to grant the wife rehabilitative alimony and classified all but one of the parties' assets as separate property. Finally, the trial court refused to tax discretionary costs against the wife and, instead, granted her $36,000.00 in attorney's fees. The parties have raised numerous issues for our review. For the foregoing reasons, we affirm in part, reverse in part, and remand this case for further proceedings.

**Tenn. R. App. P. 3; Judgment of the Chancery Court Affirmed in Part, Reversed in Part & Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Thomas F. Bloom, Nashville, TN, for Appellant

Winston S. Evans, Nashville, TN, for Appellee

**OPINION**

On July 28, 1999, Michael Delaney Galligan (Mr. Galligan) filed a complaint for divorce from Linda Medders Galligan (Ms. Medders). As grounds for the divorce, Mr. Galligan alleged irreconcilable differences and inappropriate marital conduct. Ms. Medders filed an answer denying Appellee's allegations and counterclaimed, alleging that Mr. Galligan engaged in inappropriate marital conduct and an adulterous affair during the marriage.

A trial was held on April 6 and 7, 2000, from which the court was able to make the following findings of fact. Mr. Galligan and Ms. Medders were married on October 5, 1996 in McMinnville, Tennessee. Following their marriage, the parties maintained separate residences; Mr. Galligan lived

in McMinnville and Ms. Medders lived in Lawrenceville, Georgia. The parties agreed that Mr. Galligan would visit Ms. Medders on weekends until Ms. Medders's daughter graduated from high school. When Ms. Medders's daughter graduated from high school, Ms. Medders would make a permanent move to McMinnville.

The marriage, however, soon began deteriorating and Ms. Medders never made the move to McMinnville. The court mentioned many fights between the parties, which sometimes became violent and often affected Mr. Galligan's work as an attorney in McMinnville. The court also found that Mr. Galligan began an adulterous affair on June 26, 1999 with Rhonda Harding (Ms. Harding) that had continued up until the hearing.

Although the court stated that both parties contributed to the dissolution of the marriage, the court granted the divorce to Ms. Medders based on Mr. Galligan's extramarital affair. The court, however, refused to grant Ms. Medders rehabilitative alimony. The court based its decision on the short duration of the marriage, the substantial separate property owned by each party, and the fact that the parties maintained separate residences.

With regard to division of the marital property, the court again stressed the short duration of the marriage and the extensive separate property held by each party. The court found that only one asset had been jointly purchased during the marriage. This asset, stock in a local bank, was ordered to be split equally between Mr. Galligan and Ms. Medders. All other separate assets and liabilities were to be retained by each party.

Ms. Medders sought attorney's fees in the amount of $59,000.00. The court stated that the issue of reasonableness of the fees did not need to be addressed. Instead, the court looked at the fact that Mr. Galligan had engaged in an affair with Ms. Harding, which contributed to the demise of the parties' relationship. Because the proof indicated that Mr. Galligan had purchased gifts for Ms. Harding totaling $36,000.00, the court awarded Ms. Medders $36,000.00 in attorney's fees.

Following motions by both parties to alter or amend the court's final judgment, Ms. Medders filed this appeal. Both Ms. Medders and Mr. Galligan have raised raises numerous issues for our review.

## I. CLASSIFICATION AND DIVISION OF PROPERTY

Ms. Medders's first two issues concern the court's classification and division of property between the parties. When faced with the obligation to divide the assets of divorcing parties, courts must first classify each asset as either marital or separate property. Dunlap v. Dunlap, 996 S.W.2d 803, 814-815 (Tenn. Ct. App. 1998) (citing Cutsinger v. Cutsinger, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995)). When classifying the property, courts must look to section 36-4-121(b) of the Tennessee Code. Section 36-4-121(b) provides in pertinent part:

(1) (A) "Marital property" means any real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage . . . .

   (B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

   . . . .

   (D) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as a homemaker; wage earner; parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine . . . .

   . . . .

(2) "Separate property" means:

   (A) All real and personal property owned by a spouse before marriage;

   (B) Property acquired in exchange for property acquired before the marriage;

   (C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1) . . . .

TENN. CODE ANN. § 36-4-121(b) (2001).

After characterizing the parties' assets as either marital or separate property, the trial court must give parties their separate property and make an equitable division of marital assets. See Batson v. Batson, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). An equitable division of property does not necessarily mean an equal division. See Bookout v. Bookout, 954 S.W.2d 730, 732 (Tenn. Ct. App. 1997); Batson, 769 S.W.2d at 859. "The division of the estate is not rendered inequitable simply because it is not mathematically equal, or because each party did not receive a share of every item of marital property." King v. King, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (citing Cohen v. Cohen, 937 S.W.2d 823, 832 (Tenn. 1996); Ellis v. Ellis, 748 S.W.2d 424, 427 (Tenn. 1988); Brown v. Brown, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994)).

In determining what constitutes an equitable division of marital assets, the court will consider the factors listed in section 36-4-121(c) of the Tennessee Code. Section 36-4-121(c) provides:

In making equitable division of marital property, the court shall consider all relevant factors including:
(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning

capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

TENN. CODE ANN. § 36-4-121(c) (2001). The court must make the division of marital property without regard to marital fault. TENN. CODE ANN. § 36-4-121(a)(1) (2001).

The trial court's classification and division of marital property enjoys a presumption of correctness on appeal and will be reversed or modified only if the evidence preponderates against the trial court's decision. See Lancaster v. Lancaster, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984); Hardin v. Hardin, 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983). "The trial court is granted broad discretion in adjusting and adjudicating the parties' interest in all jointly owned property. Its decision regarding division of the marital property is entitled to great weight on appeal." Watters v. Watters, 959 S.W.2d 585, 590 (Tenn. Ct. App. 1997) (citing Batson, 769 S.W.2d at 859). The fairness of the property division is judged upon its final results. See Wade v. Wade, 897 S.W.2d 702, 717 (Tenn. Ct. App. 1994) (citing Thompson v. Thompson, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990)).

*A. Classification of Property as Separate Property*

In the case *sub judice*, Ms. Medders first argues that the trial court improperly classified three assets as separate property. Ms. Medders asserts that a 401(k) retirement account held by Mr. Galligan as well as the appreciation in value of two pieces of real estate should be deemed marital property. We will discuss each of these assets separately.

1. The Retirement Account

With regard to Mr. Galligan's retirement account, Ms. Medders asserts that she persuaded Mr. Galligan to open the account one week after the parties were married. According to Ms. Medders, Mr. Galligan made an initial investment of $22,500.00, with funds coming from either pre-marriage earnings or money borrowed by Mr. Galligan. Ms. Medders further asserts that Mr.

Galligan contributed an additional $37,500.00 to the account throughout the course of the marriage. At the time of the divorce hearing, the account was worth $163,000.00. Relying on Cohen and McKee v. McKee, No. M1997-00204-COA-R3-CV, 2000 Tenn. App. LEXIS 452 (Tenn. Ct. App. July 13, 2000), Ms. Medders argues that as a matter of law, the court should have deemed this account marital property.

The findings of fact made by the trial court indicate that Mr. Galligan's initial $22,500.00 investment to his retirement account came from Mr. Galligan's separate, previously earned property. Thus, with regard to these funds, the relevant statutory authority we must focus on is section 36-4-121(b)(2)(C). This section states that "[i]ncome from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1)" should be considered separate property. TENN. CODE ANN. at § 36-4-121(b)(2)(C).

Ms. Medders asserts that she substantially contributed to the preservation and appreciation of this asset, as contemplated in subdivision (b)(1), by encouraging Mr. Galligan to set up the account. Further, because of her role in the account's creation, she argues that Mr. Galligan's initial investment became marital property. From our review of the record, however, the evidence is insufficient to overturn the trial court's determination that Ms. Medders did not substantially contribute to the preservation and appreciation of this account. Thus, the initial investment and its appreciation remained separate property.

More troubling, though, is the additional $37,500.00 that Mr. Galligan allegedly contributed to the retirement account throughout the remainder of the marriage. Unfortunately, the trial court, in its finding of facts, only discusses the initial investment of $22,500.00. Mr. Galligan testified at trial, however, that approximately $60,000.00 had been contributed to the retirement account. The record is unclear on whether the additional $37,500.00 was additional pre-marriage earnings or whether it was earned during the marriage. Accordingly, with regard to the additional contributions, we remand this issue to the trial court. Upon remand, the trial court should determine if the additional contributions made to the retirement plan were derived from Mr. Galligan's earnings during the marriage. If so, that portion of the retirement account and the appreciation associated with it should be deemed marital property pursuant to section 36-4-121(b)(1)(B) of the Tennessee Code as suggested by Ms. Medders.

### 2. Property Located at 309 West Main Street

Next, Ms. Medders argues that she substantially contributed to the appreciation and preservation in value of Mr. Galligan's real estate located at 309 West Main Street in McMinnville (West Main property). During the marriage, Mr. Galligan decided to renovate the West Main property and convert its use to include his law practice. Ms. Medders asserts that she played an integral role in the renovation. Ms. Medders further asserts that this renovation increased the value of this property by approximately $130,000.00. Because of her role in increasing the value of the property, Ms. Medders concludes that the appreciation in the value of the West Main property should be deemed marital property.

The trial court, however, never reached the issue of Ms. Medders's participation in the renovation. Instead, the trial court held that the overall value of the West Main property never increased. The trial court's final judgment indicated that during the marriage, the gross value of the home increased from $225,000.00 to $326,000.00. The mortgage debt encumbering the property, which was deemed to be Mr. Galligan's sole responsibility, increased from $75,000.00 to $183,000.00 during the marriage. Accordingly, by our math, the net value of the West Main property actually decreased by $7,000.00.

Ms. Medders argues that much of the funds from the mortgage were used to purchase personal property for use in Mr. Galligan's law practice and should not be considered true debt on the property. The debt associated with the personalty, she asserts, should not be used to decrease the overall "value" of the renovated structure. Ms. Medders's argument hinges on her assertion that Mr. Galligan's law firm actually owns the furniture and that Mr. Galligan will be able to "capture" the increase in the value of the real estate when the West Main property is sold and retain the furniture debt-free.

We disagree with Ms. Medders's logic. Whether the law firm owns the furniture or not, the debt is still attached to the real estate and, consequently, Mr. Galligan will be responsible for it. If and when Mr. Galligan chooses to sell the property, the value of his return on the property will still be reduced by the mortgage amount. Whether the proceeds from the mortgage were used to improve the real estate or purchase personalty, the fact still remains: Mr. Galligan will be solely responsible for repayment. Accordingly, we affirm the trial court's ruling in which the increase, or actually the decrease, in value of the West Main property was separate property.

### 3. The Mountain Property

The record indicates that Mr. Galligan owns a residence and approximately thirty-five acres located along Long Mountain Road on Ben Lomand Mountain. Mr. Galligan purchased these properties prior to the marriage and secured both by mortgages. The record indicates that, during the marriage, the mortgage on the residence was reduced by $4,000.00 and the mortgage on the acreage was reduced by $9,000.00.

In her brief, Ms. Medders argues the increased equity on the acreage in the amount of $9,000.00 should be deemed marital property. Ms. Medders bases her argument on her assertion that the mortgage on the property was paid down with money earned by Mr. Galligan during the marriage and that such earnings were marital property.

In his response, Mr. Galligan discusses the increased equity in the mountain residence in the amount of $4,000.00 instead of the increased equity in the acreage. He argues that because the property was owned prior to the marriage, it should not be considered marital property unless Ms. Medders "substantially contributed to its preservation and appreciation" as contemplated in section 36-4-121(b)(1)(B) of the Tennessee Code. Further, Mr. Galligan asserts that the trial court distinctly found that neither party substantially contributed to the preservation or appreciation of any of the

separate property of the other and, thus, the trial court properly classified the mountain as separate property.

Mr. Galligan, however, in his brief, does not deny that the mortgage on the property was reduced by income he earned during the marriage. Instead, Mr. Galligan argues that Ms. Medders did not substantially contribute to his law practice from which the money was earned or to household duties and his emotional well-being. Finally, Mr. Galligan argues that if his income during the marriage is deemed marital income, then the Federal Income Tax debt totaling $229,746.00 that Mr. Galligan still owes to the government associated with that income should also be considered a marital debt.[1]

In Mondelli v. Howard, 780 S.W.2d 769, 774 (Tenn. Ct. App. 1989), this Court held that the increase in equity of separate real property should be considered marital property when the equity in the property was increased by use of marital funds. Id.; See also Cohen, 937 S.W.2d at 832-33. Further, pursuant to section 36-4-121(b)(1)(A) of the Tennessee Code, as stated above, "'Marital property' means any real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage. . . ." TENN. CODE ANN. § 36-4-121(b)(1)(A) (2001). Based on this language, we agree with Ms. Medders that the money earned by Mr. Galligan during the marriage should be considered marital property. Applying our holding in Mondelli, because the equity in Mr. Galligan's acreage was increased by $9,000.00 through his use of marital funds, the increased equity should be considered marital property. Accordingly, we reverse the decision of the trial court with regard to this issue and hold that Mr. Galligan's $9,000.00 increase in equity in the mountain acreage is marital property subject to division.[2]

## B. Distribution of the Marital Property

The second issue raised for our review by Ms. Medders concerns the trial court's distribution of the marital assets. She asserts that the trial court erred in misapplying the factors listed above in section 36-4-121(c) of the Tennessee Code in distributing the assets. Because of our holdings above concerning Mr. Galligan's retirement account and mountain property, we are unable to address this issue. On remand, the trial court will be forced to determine whether the additional contributions made to the retirement plan were derived from Mr. Galligan's earnings during the marriage. This

---

[1] Ms. Medders, in her reply brief, asserted that she is "not making any claim to the increase in equity even though it is, as a matter of law, marital property." In support of this allegation, Ms. Medders points to a footnote in her first brief where she stated, "Although the reduction of mortgage debt on [Mr. Galligan's] mountain cottage with marital funds should also be classified as marital property, [Ms. Medders] is making no claim to this property." Taken in context, however, Ms. Medders was indicating that she wanted no interest in the real estate itself; instead, she wanted only the value of the increased equity deemed marital property. We also note that in her first brief, Ms. Medders stated that, "the increase in value of this real estate should be classified as marital property subject to equitable division." Accordingly, this issue is properly before us for review.

[2] We make no ruling with regard to the $4,000.00 increase in equity related to the mountain residence. Ms. Medders did not ask this Court to declare that property marital property.

determination will affect whether that portion of the retirement account and its appreciation are marital property. Further, we have reversed the trial court's ruling concerning the increased equity in Mr. Galligan's mountain acreage and income earned during the marriage by holding that it is marital property. As stated above, the fairness of the property division is judged upon its final results. See Wade, 897 S.W.2d at 717 (citations omitted). Accordingly, on remand, the trial court will have to weigh again the distribution of the marital property in light of our ruling.

## II. REHABILITATIVE SUPPORT

Ms. Medders's next issue raised for our review concerns the trial court's refusal to grant her rehabilitative support. There are no hard and fast rules governing the availability of spousal support. Crain v. Crain, 925 S.W.2d 232, 234 (Tenn. Ct. App. 1996). Section 36-5-101(d)(1) of the Tennessee Code, however, provides a framework from which courts can make a proper determination of whether support is needed. This section states:

> It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. . . . In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>
> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
>
> (C) The duration of the marriage;
>
> (D) The age and mental condition of each party;
>
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
>
> (G) The separate assets of each party, both real and personal, tangible and intangible;
>
> (H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

TENN. CODE ANN. § 36-5-101(d)(1) (2001). In addition, our supreme court has stated that "[w]hile there is no absolute formula for determining the amount of alimony, 'the real need of the spouse seeking the support is the single most important factor.'" Aaron v. Aaron, 909 S.W.2d 408, 410 (Tenn. 1995) (quoting Cranford v. Cranford, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)). Next, "the courts most often consider the ability of the obligor spouse to provide support." Id. Finally, this Court has held where the marriage was of a short duration, "the justification for spousal support is diminished when the spouse seeking support has contributed little, directly or indirectly, to the marriage. Crain, 925 S.W.2d at 234.

We must also be cognizant of the fact that trial courts retain discretion in determining whether or not to award rehabilitative support and that "appellate courts will not interfere except in the case of an abuse of discretion." Burlew v. Burlew, 40 S.W.3d 465, 470 (Tenn. 2001) (citations omitted). Further, in determining whether an abuse of discretion has occurred, we must not merely substitute our judgment for that of the trial court. White v. Vanderbilt Univ., 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999) Instead, appellate review must seek to determine whether the lower court's decision has a basis in law or fact and is therefore not arbitrary, illogical, or unconscionable. State v. Brown & Williamson Tobacco Corp., 18 S .W.3d 186, 191 (Tenn.2000). Where a court has improperly construed or applied the applicable legal principles, appellate courts may properly reverse the trial court's decision. White, 21 S.W.3d at 223.

Turning to the case *sub judice*, in a letter ruling issued by the court, the chancellor directly stated that the court had "considered the provisions of *Tennessee Code Annotated* § 36-5-101(d)" and because of the short duration of the marriage, the fact that the parties maintained separate residence during the marriage, and because of the "substantial separate assets" enjoyed by Ms. Medders, she was not entitled to an award for rehabilitative support. In support of the court's findings, the record indicates that at the time of the divorce, Ms. Medders's net worth totaled $667,971.76, an increase of $137,323.00 from when the parties were married. The record also indicates that although Mr. Galligan earns a high income, his net worth had decreased by $95,399.83 to $270,087.50 during the marriage. Due to Ms. Medders's extensive assets, the short duration of the marriage, and the unusual fact that the parties never resided together, we hold that the court did not abuse its discretion in refusing to award Ms. Medders rehabilitative support. The court obviously applied the correct factors, chose an acceptable alternative, and did not act contrary to the weight of the evidence.

### III. Mr. Galligan's Expert Witness

In her fourth issue, Ms. Medders's argues that the trial court abused its discretion in allowing two expert witnesses obtained by Mr. Galligan to testify as to the value of her home in Lawrenceville, Georgia and five rental properties she owns in Florida. During the trial, Ms. Medders motioned the court to exclude the testimony of these experts because Mr. Galligan failed to give proper notice of his intent to have the two experts testify as required under Tennessee Rule of Civil Procedure 26.05. The court allowed the experts to testify and gave Ms. Medders an additional seven days to procure her own experts.

Tennessee Rule of Civil Procedure 26.05 provides in pertinent part that a party who has responded to a request for discovery "is under a duty seasonably to supplement the party's response" to include information thereafter acquired. TENN. R. CIV. P. 26.05. This duty requires parties to provide updated information on "the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of that testimony." Id. With regard to this rule, this Court recently stated:

> Although the rules do not provide a sanction for a party's failure to seasonably supplement his or her responses, trial judges have the inherent power to take corrective action against a party for abuse of the discovery process. Lyle v. Exxon Corp., 746 S.W.2d 694, 699 (Tenn. 1988). In some cases, the trial judge may deem that the exclusion of the undisclosed expert's testimony is the appropriate sanction, see Ammons v. Bonilla, 886 S.W.2d 239, 243 (Tenn. Ct. App. 1994), although other, less severe sanctions may be appropriate where the failure to disclose is not knowing and deliberate. Lyle, 746 S.W.2d at 699.

Solomon v. Hagar, No. E2000-02586-COA-R3-CV, 2001 Tenn. App. LEXIS 929, at *31 (Tenn. Ct. App. Dec. 27, 2001). Where parties have not acted knowingly and deliberately in failing to supplement their responses, our supreme court has given four factors to be considered in determining the appropriate sanction: the party's explanation, the importance of the proffered testimony, the time needed to prepare for the witness, and the possibility of a continuance. Lyle, 746 S.W.2d at 699.

Here, we must first note that Ms. Medders does not suggest that Mr. Galligan acted knowingly and deliberately in failing to seasonably notify her of his intent to call the two experts as witnesses. Accordingly, the trial court should have applied the four factors given in Lyle in fashioning an appropriate sanction. From our review of the record, it appears that the trial court considered the fact that Mr. Galligan was unable to find the experts until the last minute and notified Ms. Medders's counsel almost immediately upon securing their appearance. Further, the court considered the fact that although Ms. Medders could testify as to the value of her property, Mr. Galligan could only produce evidence as to the value of the property with experts. Finally, the court offered Ms. Medders an additional seven days to procure expert witnesses of her own to ensure that she had a chance to rebut Mr. Galligan's experts' conclusions. Under these circumstances and in light of the factors given in Lyle, we hold that the trial court did not abuse its discretion in allowing Mr. Galligan's experts to testify.

### IV. The Exclusion of Mr. Galligan's Alleged Prior Consistent Statements

The first issue raised by Mr. Galligan in this appeal concerns an alleged prior consistent statement that the court refused to allow into the proceedings. At trial, Mr. Galligan testified that Ms. Medders had physically abused him on several occasions by bloodying his nose, ripping his shirt, kicking him in the testicles, and cutting him with a knife. Ms. Medders, in her testimony, however, stated that she had never cut or kicked Mr. Galligan and that she had only heard of these allegations soon before the filing of the divorce. Ms. Medders further testified that in the incident involving Mr. Galligan's bloodied nose, she struck him only after he had grabbed her by the hair.

Mr. Galligan attempted to call two rebuttal witnesses to testify to prior statements he had made that were consistent with his testimony. Ms. Medders objected to the witnesses' testimony on the ground that it would be hearsay. Mr. Galligan responded to the objection stating that Ms. Medders attacked his credibility and suggested that his testimony was a fabrication. Therefore, Mr. Galligan argued, the testimony of his rebuttal witnesses would fall within the exception to the hearsay rule allowing prior consistent statements for rehabilitative purposes. After an offer of proof in which the two witnesses testified, Mr. Galligan states that the court sustained Ms. Medders's objection and refused to consider the testimony of the witnesses.

Mr. Galligan now argues that the trial court erred in refusing to consider this evidence and requests that this Court modify the final judgment so that it states that Ms. Medders inflicted physical abuse upon him. We must first note that Mr. Galligan is correct in that the prior consistent statement exception to the hearsay rule has been applied in civil as well as criminal matters. See Davidson v. Holtzman, 47 S.W.3d 445, 455 (Tenn. Ct. App. 2000). In Davidson, this Court applied the prior consistent statement exception in a civil matter and held that a witness's testimony of a prior consistent statement could be introduced for the sole purpose of corroborating the testimony of the witness whose veracity was attacked. Id.

Here, however, any error committed by the trial court was harmless error. From our review of the record, it appears that the trial considered Mr. Galligan's testimony concerning the abuse. In the court's letter ruling, the court stated:

> The Court has heard the undisputed testimony that [Ms. Medders] participated in an altercation in which [Mr. Galligan's] nose was blooded, an incident about which the [Mr. Galligan] testified in more detail than did [Ms. Medders]. [Ms. Medders] denied substantial liability for that issue, but the testimony of [Mr. Galligan] placed substantial responsibility upon her. The Court also heard testimony of an incident where [Mr. Galligan] was cut by a knife held by [Ms. Medders], which circumstances [Ms. Medders] totally denied, and other instances involving physical altercations by [Ms. Medders] against [Mr. Galligan]. The Court has further heard the undisputed evidence that [Mr. Galligan] began an extramarital affair prior to the filing of divorce, which affair continues to the present time. . . . The Court has considered all of these circumstances, as well as other evidence of fault, and has determined that the

great fault rests with [Mr. Galligan] due to the existence of the extramarital relationship, and finds that the divorce should be granted to the wife upon the basis of adultery.

Nowhere in the court's discussion does it suggest that Mr. Galligan's statements were a recent fabrication. Further, Mr. Galligan has not asked us to overturn the court's decision granting the divorce to Ms. Medders. Instead, Mr. Galligan has merely asked us to modify the finding of fact to include a statement on abuse. The court, however, had already found that both parties were at fault. As such, we find Mr. Galligan's arguments to be without merit and choose not to disturb the trial court's decision.

## V. DISCRETIONARY COSTS

Mr. Galligan's second issue raised in this appeal concerns the trial court's refusal to grant him $6,262.82 in discretionary costs. The requested discretionary costs consisted of $4,840.57 for the procurement of expert witnesses and $1,422.25 for court reporter fees. Mr. Galligan asserts that the court's refusal to grant him these expenses should be reversed.

Tennessee Rule of Civil Procedure 54.04 authorizes trial courts to award certain discretionary costs incurred in a proceeding to the prevailing party. TENN. R. CIV. P. 54.04. When awarding discretionary costs, as the name denotes, judges are given broad discretion and their decisions will not overturned on appeal unless the challenging party can clearly demonstrate an abuse of discretion. See Placencia v. Placencia, 3 S.W.3d 497, 503 (Tenn. Ct. App. 1999) (citing Perdue v. Green Branch Mining Co., 837 S.W.2d 56, 60 (Tenn. 1992)). We recently stated in Milliken v. Crye-Leike Realtors, No. M1999-00071-COA-R3-CV, 2001 Tenn. App. LEXIS 472 (Tenn. Ct. App. July 5, 2001) the following with regard to discretionary costs:

> Generally, trial courts award such [discretionary] costs to whichever party ultimately prevails in the lawsuit, provided the prevailing party has filed a timely, properly supported motion. The successful party is not, however, automatically entitled to an award of costs. Instead, trial courts are free to apportion costs between the litigants as the equities of each case demand. Accordingly, if any equitable basis appears in the record which will support the trial court's apportionment of costs, this court must affirm. Moreover, on appeal, the appellant bears the burden of showing that the trial court abused its discretion in its assessment of costs. Sanders v. Gray, 989 S.W.2d at 345 (citations omitted).

Milliken, 2001 Tenn. App. LEXIS 472, at *35.

Here, Mr. Galligan argues that Ms. Medders should be taxed with the requested discretionary costs because she unduly prolonged the proceedings, did not prevail in the lawsuit, and made no claim that the requested costs were unreasonable. Irrespective of whether Ms. Medders received all that she requested in her counterclaims, Mr. Galligan appears to overlook the fact that Ms. Medders was granted the divorce. Further, after careful review of the record, we do not find that the equities

sufficiently demonstrate that Mr. Galligan should have been awarded discretionary costs. Accordingly, in light of the discretion held by the trial court and the facts of this case, we affirm the court's refusal to grant Mr. Galligan his requested discretionary costs.

## VI. MS. MEDDER'S ATTORNEY'S FEES INCURRED AT THE TRIAL LEVEL

The last issue raised by Mr. Galligan concerns the trial court's decision to award Ms. Medders $36,000.00 in attorney's fees. During the trial, Ms. Medders filed an affidavit with the court stating that she had incurred $59,129.40 of attorney's fees and requested that Mr. Galligan be ordered to pay this amount. In the court's letter ruling, the court stated, "The evidence has shown that [Mr. Galligan] expended some $36,000.00 in gifts for the person with whom he enjoys the extramarital relationship, and the Court finds that it is proper that he contribute a like amount to the counsel fees charged by the attorney for [Ms. Medders]." Similarly, in the court's final order and findings of fact, the court stated, "Mr. Galligan should pay Ms. Medders $36,000.00 to be applied toward Ms. Medders' reasonable attorneys' fees and legal expenses in this case, which is the amount he expended for gifts for the person with whom he enjoys the extramarital relationship." Mr. Galligan argues that the court erred in this decision and for the following reasons, we agree.

This court has repeatedly held that an award for attorney's fees in a divorce case is treated as spousal support and should be characterized as alimony *in solido*. Wild v. Wild, 66 S.W.2d 892, 894 (Tenn. Ct. App. 2001) (citing Sannella v. Sannella, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999); Smith v. Smith, 984 S.W.2d 606 (Tenn. Ct. App. 1997); Anderton v. Anderton, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1988); Gilliam v. Gilliam, 776 S.W.2d 81 (Tenn. Ct. App. 1988)). Accordingly, when reviewing a court' decision to award attorney's fees, we must recognize the wide discretion given to the trial court. Id. Appellate courts may reverse a trial court's decision to award attorney's fees, however, "where the evidence preponderates against the award, and a manifest injustice will be done" by allowing the trial court's decision to stand. Id.

With attorney's fees being a form of alimony, courts must balance the factors given in section 36-5-101(d)(1) of the Tennessee Code, as stated above, in determining a proper award. Again, the cornerstones in balancing the factors are the real need of the requesting spouse and the ability of the obligor spouse to pay. Aaron, 909 S.W.2d at 410. Although the relative fault of the parties is to be considered, awards should not be punitive in nature. Anderton, 988 S.W.2d at 682. Instead, the true purpose should be to "aid the disadvantaged spouse to become and remain self-sufficient and . . . to mitigate the harsh economic realities of divorce. Id.

Turning to the present case, given the trial court's choice of language in its letter ruling and finding of facts, it is obvious that the trial court intended to punish Mr. Galligan for spending money on the woman with whom he was having an affair. This reasoning provides insufficient support for the court's award. Further, as stated above, a primary factor that the court should have considered is the disadvantaged spouse's ability to pay her expenses. The findings of fact, however, stated that "Ms. Medders has sufficient funds to pay the fees and expenses of her attorneys." Accordingly, we hold that the trial court erred and reverse the court's decision to award Ms. Medders $36,000.00 in attorney's fees.

Ms. Medders insists that she would be forced to liquidate her assets if required to pay her attorney's fees. Accordingly, we remand this issue to the trial court for further proceedings. On remand, the trial court should balance the factors in section 36-5-101(d) to determine if an award for reasonable attorney's fees would be proper.

## VII. Ms. Medder's Attorney's Fees Incurred in Connection with This Appeal

As a final matter, Ms. Medders's has requested that this Court order Mr. Galligan to pay her attorney's fees incurred for this appeal. Ms. Medders argues that because of Mr. Galligan's earning capacity, it would be unreasonable to require her to liquidate a portion of her assets to pay the attorney's fees she has accumulated with respect to this appeal. Further, Ms. Medders argues that although she initiated this appeal, the lower court's judgment, which improperly deprived her of her interest in certain properties, required her to seek appellate review.

Our supreme court has defined the factors that should be applied when considering a request for attorney's fees incurred on appeal. These factors include the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered. Folk v. Folk, 357 S.W.2d 828, 829 (Tenn. 1962). This Court has also held, however, that "where both parties are partially successful on appeal," attorney's fees associated with that appeal should not be granted. Baggett v. Baggett, 512 S.W.2d 292, 294 (Tenn. Ct. App. 1973) (citing 27-B C.J.S. *Divorce* § 203, p. 882, n.71.10); see also Hunt v. Hunt, No. M1997-00221-COA-R3-CV, 2000 Tenn. App. LEXIS 488, at *15-16 (Tenn. Ct. App. July 27, 2000); Young v. Young, 971 S.W.2d 386, 393 (Tenn. Ct. App. 1997). Accordingly, because both parties have been partially successful, we decline to award Ms. Medders the attorney's fees incurred for this appeal.

## VIII. Conclusion

Based on the foregoing conclusions, we hereby affirm in part and reverse in part the decision of the trial court and remand this cause for further proceedings consistent with this opinion. Costs on appeal are assessed equally against the Appellant, Linda Medders Galligan, and her surety and Appellee, Michael Delaney Galligan, for which execution may issue if necessary.

 

 

_____
ALAN E. HIGHERS, JUDGE