IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 20, 2018 Session

## JOHN A. GARDNER ET AL. v. R & J EXPRESS, LLC

**Appeal from the Circuit Court for Hamblen County**
**No. 15CV181      Beth Boniface, Judge**

_____

### No. E2017-00823-COA-R3-CV

_____

In this negligence action that arose from a tractor-trailer accident, the trial court dismissed the plaintiffs' claims following the court's determination that a critical piece of evidence had been destroyed by the plaintiffs, resulting in severe prejudice to the defendant. The court further determined that dismissal was the only equitable remedy for the plaintiffs' spoliation of evidence. The plaintiffs timely appealed the dismissal of their claims. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and W. NEAL MCBRAYER, JJ., joined.

Donald K. Vowell and Martin Ellis, Knoxville, Tennessee, for the appellants, John A. Gardner and Ester Gardner.

Trevor L. Sharpe, Knoxville, Tennessee, for the appellee, R & J Express, LLC.

### OPINION

I. Factual and Procedural Background

This action was filed as a result of a tractor-trailer accident that occurred on May 29, 2015, in North Carolina. John Gardner, one of the plaintiffs in this matter, owned an over-the-road tractor, which he was using to haul a trailer owned by the defendant, R & J Express, LLC ("R & J"), on the date in question. Ester Gardner, John Gardner's wife and co-plaintiff in this action, was riding with Mr. Gardner on that day as a passenger. The

Gardners allege that the accident occurred because the tandem axle on the trailer "suddenly and unexpectedly" came loose while they were traveling down the highway, causing the tractor-trailer to overturn. Both the tractor and trailer were damaged, and Ms. Gardner was severely injured. Shortly thereafter, on June 17, 2015, the Gardners retained counsel.

On November 18, 2015, the Gardners filed a complaint in the Hamblen County Circuit Court ("trial court"), alleging that R & J, having exclusive control of the trailer, had been negligent in its inspection and maintenance of the trailer and had failed to ensure that the trailer was in compliance with all federal motor vehicle safety standards. The Gardners asserted that the trailer was the cause of the accident in question, which had caused Ms. Gardner to suffer severe and permanent bodily injury. The Gardners also asserted that Mr. Gardner had "suffered total loss of his tractor and said tractor having been destroyed this Plaintiff has incurred a lost wage claim and a loss of earning capacity." The Gardners sought damages in the amount of $850,000.

The Gardners subsequently filed an amended complaint, adding a claim for punitive damages based on their allegation that R & J had been falsifying its annual inspection reports with regard to the trailer. The Gardners increased their *ad damnum* clause to in excess of $15,000,000.

On January 12, 2016, R & J filed an answer, denying all allegations of negligence and wrongdoing. R & J asserted that the causes of the accident were Mr. Gardner's failure to keep the tractor under control, his failure to exercise due care, and his operation of the tractor-trailer at an excessive rate of speed. R & J further claimed that Mr. Gardner failed to perform the required pre-trip inspection in accordance with federal motor carrier safety regulations. In addition, R & J alleged that Mr. Gardner's own negligence barred any recovery and that Ms. Gardner was an unauthorized passenger in the vehicle.

On July 19, 2016, R & J filed a "Motion for Spoliation Sanctions with Incorporated Memorandum of Law." Relying on Tennessee Rule of Civil Procedure 34A.02, R & J asserted that the Gardners should be sanctioned for discarding or destroying evidence. In support, R & J argued that Mr. Gardner had discarded his tractor by allowing the insurance company to take possession of it, such that he no longer knew of its whereabouts. R & J further claimed that because no witnesses had observed the accident, R & J's expert needed to inspect the tractor in order to determine whether there existed a mechanical problem that may have caused the accident. Due to the "destruction" of this "crucial" piece of evidence, R & J claimed that it was unduly prejudiced and that the only adequate remedy was dismissal of the Gardners' claims.

The Gardners filed a response opposing the motion for sanctions, wherein they asserted that Mr. Gardner did not willfully allow the tractor to be destroyed in order to prevent its inspection. The Gardners also sought sanctions against R & J for its alleged production of falsified inspection records concerning the trailer during pretrial discovery. Mr. Gardner executed an affidavit stating that he had no knowledge of anything mechanically wrong with the tractor prior to the May 2015 accident. According to Mr. Gardner, the brakes, tires, engine bearings, and other items had been recently replaced.

As Mr. Gardner indicated, on the day of the accident, he informed the owner of R & J, Rex Satterfield, about the accident and told him the location of the garage to which the tractor and trailer had been towed. Mr. Satterfield dispatched another truck to that garage within forty-eight hours to pick up the items that were being hauled in the trailer. Mr. Gardner claimed that to his knowledge, Mr. Satterfield made no attempt to inspect the tractor at that time. Mr. Gardner also reported that he later signed over the title of the tractor to the insurer who afforded insurance coverage for the tractor. He further related that Mr. Satterfield was aware of the identity of the insurer. According to Mr. Gardner, he never intended to destroy the tractor and had no idea that it was going to be "scrapped out" by the insurer. Mr. Gardner affirmed that he retained counsel on June 17, 2015, with the intent of instituting the instant action.

Following the filing of numerous motions by the parties regarding possible sanctions, the trial court conducted a hearing on September 6, 2016. Following that hearing, the Gardners filed a motion *in limine* seeking to exclude the testimony of R & J's expert, arguing in part that his opinions were based on speculation because he had never inspected the tractor.[1] The trial court held another hearing regarding the pending motions on November 17, 2016.

The trial court subsequently entered an order on December 8, 2016, determining that R & J had been "severely prejudiced" in its ability to defend against the Gardners' claims due to the unavailability of the tractor, which the court described as a "key piece of evidence." The court thus ordered that the Gardners would have thirty days to attempt to locate and produce the tractor for inspection. The court further directed that should the Gardners be unable to produce the tractor in the same condition as on the date of the accident, their complaint would be dismissed with prejudice. All other motions were held in abeyance.

The Gardners subsequently filed a motion to reconsider, reporting their discovery that the tractor's engine had been removed and the chassis sold for salvage by their insurance carrier. The Gardners stated that the tractor had been in the custody of the insurer since the accident and that the Gardners had no control over its disposition. The

---

[1] The Gardners subsequently withdrew this motion on December 12, 2016.

Gardners further posited that R & J should not be allowed to claim prejudice because R & J did not request that the tractor be preserved until January 25, 2016, which was 242 days following the accident.[2]

On December 19, 2016, R & J provided written notice to the trial court that the tractor had not been produced within the thirty-day time limit established by the court's prior order. On April 4, 2017, the trial court entered an order granting R & J's motion for sanctions, stating in pertinent part:

> The Court will first address the Defendant's Motion for Spoliation Sanctions. In 2015, the Tennessee Supreme Court clarified the totality of the circumstances analysis to be used in spoliation cases. The Court stated the determinative factors:
>
> 1. The culpability of the spoliating party in causing the destruction of the evidence, including evidence of intentional misconduct or fraudulent intent;
>
> 2. The degree of prejudice suffered by the non-spoliating party as a result of absence of the evidence;
>
> 3. Whether, at the time the evidence was destroyed, the spoliating party knew or should have known that the evidence was relevant to pending or reasonably foreseeable litigation; and
>
> 4. The least severe sanction available to remedy any prejudice caused to the non-spoliating party.
>
> *Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 747 (Tenn. 2015).
>
> In the present case, there is no evidence of intentional misconduct or fraudulent intent in Plaintiffs' destruction of the tractor; however, intentional misconduct is not a prerequisite to imposing sanctions for spoliation. *Id*. at 746. There is no doubt that as of June 17, 2015, when Plaintiffs retained legal counsel, they intended to file a lawsuit for damages. On June 24, 2015, their attorney sent a letter to Defendant informing him of Plaintiffs' intention to file an action and Defendant's responsibility to

---

[2] We note, however, that R & J's preservation request was made approximately two months following the filing of the complaint.

preserve the relevant evidence. After sending the preservation letter to the Defendant, Plaintiffs signed over the title to the tractor and the tractor was destroyed. Apparently, having sent a preservation letter to Defendant, Plaintiffs knew or should have known that the tractor was crucial evidence needing to be examined to determine the cause of the wreck. Citing Tennessee Rule of Civil Procedure 34, Plaintiffs state that the tractor was not in their "possession, custody or control" because it was at the wrecker service. The tractor would still be at the wrecker service had Plaintiffs not relinquished ownership of the tractor to the insurance company. Before signing the title, Plaintiffs at all times had ownership rights and control over the tractor and its location. If Plaintiffs did not intend to preserve the tractor for inspection, then they should have given Defendant notice of their desire to relinquish ownership of the tractor. Plaintiffs acknowledge that they had a duty to preserve the crucial evidence but, argue that Defendant did not send a preservation letter until 242 days after the accident. Plaintiffs fail to credit that Defendant's letter was sent approximately two months after being served with the Complaint. Defendant did not send the letter 242 days after commencement of the litigation. Plaintiffs argue that Defendant failed to file a Rule 34 Motion compelling Plaintiffs to produce the tractor. But the tractor was tendered to the insurance company within 30 days of the accident so an earlier letter or Rule 34 Motion would have been futile. Plaintiffs, not the Defendant, had the responsibility to preserve the tractor pursuant to Tennessee Rule of Civil Procedure 34.

The next inquiry is the degree of prejudice suffered by the Defendant. Plaintiffs argue that the evidence has "never indicted the tractor at all as the proximate cause of the accident." Therein lies the rub, the tractor could not be identified as the cause of the accident because it has always been unavailable to be inspected. Plaintiffs allege that a Declaration of Scott Moore, the person who repaired the brakes, overcomes the possibility that the brakes were faulty. Defendant has no avenue to refute this assertion. Defendant would have no proof that the brakes were malfunctioning, defective or improperly installed, whereas, Plaintiffs have had access to the evidence necessary to establish their theory of the case. Defendant is left with accepting the Plaintiffs' theory of causation as there is no way to refute it. The Plaintiffs filed a Motion in Limine to Exclude Testimony of Bryce O. Anderson, Ph.D. Regarding Brakes and Welds, because the expert opinion would be based on "conjecture, speculation and simple guesswork." Plaintiffs argue that Dr. Anderson has not inspected the crucial piece of evidence, the tractor. Plaintiffs withdrew their Motion in Limine subject to the Plaintiffs' right to cross-examine Dr. Anderson.

Allowing Dr. Anderson to testify does not cure the problem. Clearly, Dr. Anderson would have to admit, as he has in his Affidavit, that he cannot perform an adequate or thorough inspection without the tractor. Dr. Anderson's testimony would not carry any weight. Defendant's expert has not had an opportunity to measure or inspect the crush pattern, brakes or any Electronic Control Module recording device. The Defendant's expert cannot give an opinion as to causation within a reasonable degree of scientific certainty. Had the tractor been available for inspection, the evidence may have shown that the rusted/broken welds caused the accident, but it might have shown that excessive speed and faulty brakes were the primary cause of the accident. "Because no one has an exclusive insight into truth, the process depends on the adversarial presentation of evidence, precedent and custom, and argument to reasoned conclusions — all directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).

Plaintiffs argue that both sides are equally prejudiced because neither was able to inspect the tractor. *See Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734 (Tenn. 2015). This argument does not account for the fact that Plaintiffs have had access to the trailer which is the crucial piece of evidence necessary to establish their theory of the case. The two most important pieces of evidence are the tractor and the trailer. It is true that Plaintiffs' case would be stronger if they had inspected the tractor and could definitively state that there was no defect in the tractor, but Defendant's theory of the case is impossible to prove without the inspection of the tractor. Plaintiffs do not need to inspect the tractor to prove their case. Plaintiff John Gardner will testify that he was not speeding and his brakes were in perfect working order. Unless Defendant can inspect the tractor, he is left with mere cross-examination.

Having determined that a critical piece of evidence has been destroyed by the Plaintiffs resulting in severe prejudice to the Defendant, the Court finds that dismissal is the only equitable remedy.

With regard to the Gardners' claim that R & J filed falsified documents in response to discovery, the trial court ruled that the imposition of sanctions was not required. Rather, the court determined that the proper redress would be to allow the documents into evidence and then permit the Gardners to cross-examine R & J's witnesses concerning the authenticity of the documents. The court also stated, however,

that because the Gardners' claims were being dismissed, this issue had become moot. The Gardners timely appealed.

## II. Issues Presented

The Gardners present nine issues for our review, all of which relate to the overarching issue of whether the trial court properly sanctioned the Gardners by dismissing their claims. We have restated those issues slightly as follows:

1.  Whether the trial court erred by dismissing the Gardners' claims based on their purportedly innocent spoliation of evidence.

2.  Whether the trial court misapplied the controlling legal authority when imposing the sanction of dismissal.

3.  Whether the trial court properly assessed the factors listed in *Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 747 (Tenn. 2015), when making its determination regarding an appropriate sanction.

4.  Whether the trial court erred by failing to properly consider that the Gardners had signed over the title to the tractor in the routine course of insurance business, exactly as the *Tatham* plaintiff had done.

5.  Whether the trial court erred by failing to consider that the tractor was available for inspection by R & J for a period of time following the accident.

6.  Whether the trial court erred in its assessment of the degree of prejudice to R & J.

7.  Whether the trial court erred by determining that Mr. Gardner knew or should have known that the tractor was "crucial evidence" when he transferred its title to his insurance company.

8.  Whether the trial court erred by failing to consider any less severe sanctions.

9.  Whether the trial court erred by failing to consider that R & J was guilty of intentional discovery fraud or fabrication of evidence.

## III. Standard of Review

In *Tatham*, a case which involved spoliation of evidence, our Supreme Court explained as follows concerning the proper standard of review applicable to a trial court's determination of sanctions:

[I]rrespective of the doctrine of spoliation, Tennessee courts also have long maintained that trial courts have broad discretion in imposing procedural sanctions in order to preserve the integrity of the discovery process. *See Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004) ("[T]rial judges have the authority to take such action as is necessary to prevent discovery abuse."); *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988) ("[T]he inherent power of trial judges permits the trial judge to take appropriate corrective action against a party for discovery abuse."); *Alexander v. Jackson Radiology Assocs., P.A.*, 156 S.W.3d 11, 13-16 (Tenn. Ct. App. 2004) ("[T]rial courts possess the inherent authority to take actions to prevent abuse of the discovery process.") (citing *Mercer*, 134 S.W.3d at 133); *Clark Const. Grp.*, [*Inc. v. City of Memphis*], 229 F.R.D. [131,] 140 [(W.D. Tenn. 2005)] ("[T]he Tennessee Supreme Court stresses that the trial court should have wide discretion to impose the appropriate sanction [to prevent discovery abuse].").  This authority does not arise from the common law doctrine of spoliation but, instead, is rooted in the trial court's inherent power to ensure the proper administration of justice. *See Lyle*, 746 S.W.2d at 699 (noting the "inherent power of trial judges"); *Alexander*, 156 S.W.3d at 13-16 (recognizing the trial court's "inherent authority").

*Tatham*, 473 S.W.3d at 742.  Furthermore, in *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004), our Supreme Court stated:

Although the Tennessee Rules of Civil Procedure do not provide a sanction for abuse of the discovery process, trial judges have the authority to take such action as is necessary to prevent discovery abuse. Trial courts have wide discretion to determine the appropriate sanction to be imposed. Such a discretionary decision will be set aside on appeal only when "the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence." *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999) (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)). Appellate courts should allow discretionary decisions to stand even though reasonable judicial minds can differ concerning their soundness.

(Additional internal citations omitted.)

## IV. Dismissal as Sanction for Spoliation of Evidence

As previously stated, all of the Gardners' issues on appeal relate to whether the trial court properly dismissed their claims as a sanction for their purportedly unintentional spoliation of evidence. The trial court determined that dismissal was the only appropriate remedy because of the significant prejudice to R & J's ability to defend against the Gardners' claims due to R & J's inability to inspect the tractor involved in the accident.

Tennessee Rule of Civil Procedure 34A.02 provides: "Rule 37 sanctions may be imposed upon a party or an agent of a party who discards, destroys, mutilates, alters, or conceals evidence." Rule 37.02 provides for various sanctions that may be imposed for a party's failure to comply with a discovery order, including "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

In *Tatham*, our Supreme Court was asked to determine whether the sanction of dismissal was appropriately denied by the trial court when the plaintiff discarded important evidence. The *Tatham* plaintiff had filed a products liability action against the defendants, alleging that her recently purchased automobile tire had failed while she was driving, thereby causing her to become involved in an accident and suffer significant physical injuries. *See Tatham*, 473 S.W.3d at 738. Following the accident, the plaintiff was informed that her vehicle had been totaled, and she transferred the car's title to the wrecker service on the advice of her insurance company. *Id*. at 739. The tire at issue remained on the car at the time title was transferred, and the plaintiff had not yet hired an attorney and did not realize that the tire needed to be preserved. *Id*.

Following the filing of the *Tatham* plaintiff's complaint, which alleged that the tire was defective and dangerous, the defendants filed a motion seeking to have the case dismissed as a sanction for the spoliation of evidence. *Id*. Although the trial court denied the motion, the court granted the defendants an interlocutory appeal. *Id*. This Court denied the defendants' application for an interlocutory appeal, but the Supreme Court granted an appeal to determine, *inter alia*, whether the trial court abused its discretion by refusing to dismiss the case as a sanction for the spoliation of evidence. *Id*.

With regard to spoliation, the *Tatham* Court explained:

In light of both [Tennessee] Rule [of Civil Procedure] 34A.02 and the long-standing recognition discussed herein of a trial court's inherent authority and wide discretion in imposing sanctions to ensure fundamental fairness and the proper administration of justice, we hold that intentional misconduct is not a prerequisite for a trial court to impose sanctions for the spoliation of evidence, including that of a negative inference. Indeed, while in the past under the common law doctrine of spoliation, there clearly was a prerequisite of intentional misconduct for a trial court to impose the specific sanction of a negative inference against the spoliating party, we see no reason to continue the requirement of intentional misconduct for the imposition of sanctions for the spoliation of evidence whether the sanction be imposed under the common law doctrine, under the inherent authority of the court, or under Rule 34A.02. We hold today that the analysis for the possible imposition of any sanction for the spoliation of evidence should be based upon a consideration of the totality of the circumstances. To adopt an inflexible, bright-line rule restricting a trial court's power to fashion the appropriate remedy for spoliation of evidence would be contrary to the trial court's inherent authority to sanction abuses of the discovery process and to remedy the potential prejudice caused thereby. Therefore, intentional misconduct should not be a prerequisite to the imposition of some sanction under any approach. Rather, such determinations should be made on a case-by-case basis considering all relevant circumstances. Whether the conduct involved intentional misconduct simply should be one of the factors considered by the trial court.

The decision to impose sanctions for the spoliation of evidence is within the wide discretion of the trial court. The determination of whether a sanction should be imposed for the spoliation of evidence necessarily depends upon the unique circumstances of each case. Factors which are relevant to a trial court's consideration of what, if any, sanction should be imposed for the spoliation of evidence include:

> (1) the culpability of the spoliating party in causing the destruction of the evidence, including evidence of intentional misconduct or fraudulent intent;
>
> (2) the degree of prejudice suffered by the non-spoliating party as a result of the absence of the evidence;
>
> (3) whether, at the time the evidence was destroyed, the spoliating party knew or should have known that the evidence

was relevant to pending or reasonably foreseeable litigation; and

(4) the least severe sanction available to remedy any prejudice caused to the non-spoliating party.

A trial court's discretionary decision to impose a particular sanction "will be set aside on appeal only when 'the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of evidence.'" *Mercer*, 134 S.W.3d at 133 (quoting *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)). With regard to the specific sanction of dismissal of an action, although we recognize that the dismissal of an action is a severe sanction, we hold that "such a sanction would be appropriate in circumstances where any less severe remedy would not be sufficient to redress the prejudice caused" to the non-spoliating party by the loss of the evidence. *Cincinnati Ins. Co.* [*v. Mid-South Drillers Supply, Inc.*], [No. M2007-00024-COA-R3-CV,] 2008 WL 220287, at *4 [(Tenn. Ct. App. Jan. 25, 2008)].

473 S.W.3d at 745-47 (footnotes and additional internal citations omitted).

Therefore, the High Court determined in *Tatham* that the trial court had not abused its discretion in denying the sanction of dismissal for the plaintiff's spoliation of evidence. *Id*. at 748. The Court considered that the spoliation was not the result of any intentional misconduct because the proof demonstrated that the plaintiff had simply transferred the title of her car to the wrecker service upon advice from her insurer, and the car was subsequently destroyed as part of a "routine practice." *Id*. at 747. The Court also considered that because neither party had the opportunity to examine the tire, the defendants incurred no real prejudice. As the Court noted, the plaintiff's expert only offered testimony "regarding the general nature of tire manufacturing and accidents caused by tire failure," and the defendants were able to offer rebuttal testimony on this same topic. *Id*.

In the case at bar, the trial court's order demonstrates that the court properly considered all four of the factors listed in *Tatham*. The court rendered extensive findings regarding each factor, as detailed above. The court specifically found that there was no evidence of intentional misconduct or fraud on the part of the Gardners with regard to the destruction of the tractor; we agree that the evidence supports such a finding. However, as the *Tatham* Court explained, this factor "simply should be one of the factors considered by the trial court" in determining the appropriate sanction for spoliation of evidence. *See id*. at 746.

With regard to the second factor, the trial court determined that the non-spoliating party, R & J, would be severely prejudiced by the absence of the tractor in this matter. We agree with this determination. Without the opportunity to examine the tractor's condition and determine whether it possibly caused or contributed to the accident, R & J would have the sole remaining option of defending the condition of its trailer, which both parties were able to thoroughly examine. R & J would also be unable to refute Mr. Gardner's testimony regarding the condition of the tractor at the time of the accident. The trial court placed great emphasis on this factor in its analysis regarding the appropriate sanction for spoliation.

Concerning the third factor, the trial court determined that the Gardners knew as of June 17, 2015, the date upon which they retained counsel and a mere nineteen days following the accident, that they intended to file an action seeking damages. Mr. Gardner affirmed this to be true in his deposition. As the trial court pointed out, the Gardners' counsel sent a letter to R & J on June 25, 2015, informing R & J of the Gardners' intent to file a lawsuit and of R & J's responsibility to preserve the trailer as evidence. This letter expressly states in pertinent part:

> This letter is to formally demand the preservation of certain evidence related to this collision. If you fail to properly secure and preserve these important pieces of evidence it will give rise to the legal presumption that the evidence would have been harmful to your side of the case. The destruction, alteration, or loss of any of the below constitutes a spoliation of evidence.

The first item on the list of evidence the Gardners requested to be preserved was the trailer. Despite this request for preservation of the trailer and having the benefit of legal counsel, Mr. Gardner acknowledged that he transferred title of the tractor four days later on June 29, 2015. The tractor was then dismantled and sold for scrap within a matter of days.[3] Clearly, Mr. Gardner and his counsel should have known that the tractor was relevant to the foreseeable litigation.

Finally, with regard to the fourth factor, the trial court found that dismissal was "the only equitable remedy" due to the severe prejudice suffered by R & J. Again, we

---

[3] A communication from Mr. Gardner's counsel contained within the record demonstrates that the tractor was "sold as salvage to Charlotte Truck Parts and received in their salvage yard on July 2, 2015." Therefore, any argument by the Gardners that R & J had ample opportunity to inspect the tractor following their notification of an impending lawsuit on June 25, 2015, and the disposal of the tractor on or before July 2, 2015, is untenable.

agree with the trial court's determination. As the court aptly recognized in its written order:

> Defendant is left with accepting the Plaintiffs' theory of causation as there is no way to refute it. . . . Had the tractor been available for inspection, the evidence may have shown that the rusted/broken welds caused the accident, but it might have shown that excessive speed and faulty brakes were the primary cause of the accident.

The court further noted that both parties were not equally prejudiced by the absence of the tractor because "Plaintiffs have had access to the trailer which is the crucial piece of evidence necessary to establish their theory of the case." By contrast, the court recognized that "Defendant's theory of the case is impossible to prove without the inspection of the tractor. Plaintiffs do not need to inspect the tractor to prove their case."

Because R & J was rendered unable to effectively set forth its defense due to the destruction of the tractor, the trial court determined that dismissal of the Gardners' action was warranted. Although we agree that dismissal is a severe sanction, our Supreme Court has expressly held that "'such a sanction would be appropriate in circumstances where any less severe remedy would not be sufficient to redress the prejudice caused' to the non-spoliating party by the loss of the evidence." *See Tatham*, 473 S.W.3d at 747 (quoting *Cincinnati Ins. Co. v. Mid-South Drillers Supply, Inc.*, No. M2007-00024-COA-R3-CV, 2008 WL 220287, at *4 (Tenn. Ct. App. Jan. 25, 2008)).

The Gardners argue that the holding in *Tatham* requires the opposite result in this case. Although the trial court in *Tatham* ultimately reached a different conclusion regarding the appropriate sanction, we cannot conclude that the trial court in this matter "misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of evidence," thus abusing its discretion. *See Mercer*, 134 S.W.3d at 133. There are two obvious factual distinctions between the circumstances presented in *Tatham* and those of the instant action. First, in *Tatham*, there was a witness to the accident who corroborated the plaintiff's testimony that the tire had failed, who claimed that she saw something on the tire "flapping" and subsequently witnessed a piece of the tire "c[o]me out from under the car" immediately before the accident occurred. *See Tatham*, 473 S.W.3d at 738. By contrast, in the instant action, the only witnesses to the accident were the Gardners. Ergo, no other witness could rebut the Gardners' assertion that the accident was caused by a mechanical problem with the trailer rather than the tractor.

Second, there existed two critical pieces of evidence in this case (the tractor and the trailer), compared to a single piece of evidence in *Tatham*. Thus, as the trial court

herein pointed out, the Gardners were able to inspect the trailer and gather evidence to support their theory of the accident's cause while R & J was unable to similarly inspect the tractor and determine whether it contributed to or caused the accident. In *Tatham*, neither party was able to inspect the tire at issue, and accordingly, both parties were left in the identical position of relying on expert testimony to establish whether a "flaw in the design or manufacturing of the tire led to its failure." *Id*. at 747. By contrast, in the case at bar, without the ability to inspect the tractor at issue, the parties are placed in quite disproportionate postures. We therefore conclude that the Gardners' reliance solely on the outcome in *Tatham* is misplaced.

Importantly, the Supreme Court's decision to affirm the trial court's ruling in *Tatham* was premised substantially on the applicable standard of review. The Court specifically stated:

> Although the trial court did not expressly consider in its order any of the other factors discussed herein, nothing in the record supports the conclusion, as the Defendants suggest, that the trial court applied intentional misconduct as a rigid prerequisite to sanction. Therefore, we cannot conclude from the record that the trial court based its ruling on an incorrect legal standard. Nor can we, based on our own analysis of the record in light of the relevant factors, conclude that the trial court acted inconsistently with the substantial weight of the evidence. *See Mercer*, 134 S.W.3d at 133 ("Such a discretionary decision will be set aside on appeal only when 'the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence.'") (quoting *White*, 21 S.W.3d at 223). Based on the foregoing reasoning, we conclude that the trial court did not abuse its discretion when it declined to dismiss the case as a sanction for the spoliation of evidence in this case.

*Tatham*, 473 S.W.3d at 748. Accordingly, the trial court's decision in this case must be evaluated incorporating the same deferential standard. We determine that the trial court herein neither "based its ruling on an incorrect legal standard" nor "acted inconsistently with the substantial weight of the evidence." *Id*. We therefore conclude that the trial court did not abuse its discretion regarding the sanction imposed.

The Gardners also present essentially an unclean hands argument, asserting that R & J was guilty of wrongdoing by allegedly providing falsified inspection records in response to discovery, such that the trial court should have imposed a lesser sanction against the Gardners because there existed "impropriety" on both sides. In response, R & J points out that the Gardners did not actually prove any wrongdoing by R & J because R

14

& J had explained that it was guilty of admittedly "sloppy recordkeeping" but did not commit fraud. The trial court determined that the proper remedy for any issues concerning R & J's inspection reports was to permit the Gardners to cross-examine R & J's witnesses respecting the authenticity of the documents. Ultimately, however, the issue was rendered moot when the Gardners' claims were dismissed. The Gardners have not demonstrated that they would have suffered prejudice by the admission of these documents, subject to proper cross-examination, similar to the prejudice R & J would have experienced by being denied access to a critical piece of evidence. We determine this argument to be unavailing.

## V. Conclusion

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in imposing the sanction of dismissal for the Gardners' spoliation of evidence. We therefore affirm the trial court's ruling in all respects. Costs on appeal are assessed to the appellants, John and Ester Gardner. This case is remanded to the trial court for collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE