# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
December 15, 2015 Session

## MAGDI MIKHEIL ET AL. v. NASHVILLE GENERAL HOSPITAL AT MEHARRY ET AL.

### Appeal from the Circuit Court for Davidson County
### No. 07C3058     Hamilton V. Gayden, Jr., Judge

_____

### No. M2014-02301-COA-R3-CV – Filed January 29, 2016
_____

In this health care liability action, the plaintiffs disagree with a number of the trial court's rulings upon which it based its decision to grant summary judgment in favor of the defendants. The trial court excluded the plaintiffs' life care planner due to their failure to provide a complete disclosure of the life care planner's opinions in a timely manner. The trial court ruled that the plaintiffs' sole standard of care expert, a neurosurgeon, was not competent to testify as to the standard of care of the defendant nurse practitioner. Furthermore, the trial court precluded the plaintiffs' standard of care expert from testifying at all due to the plaintiffs' repeated failure to comply with the court's orders regarding discovery. We find no abuse of discretion with respect to the trial court's decisions and affirm the judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Blair Pierson Durham, Nashville, Tennessee, and Euel Walter Kinsey, Jr., Detroit, Michigan, for the appellants, Magdi Mikheil and Salwa Gerges.

James E. Looper, Jr. and Heather D. Piper, Nashville, Tennessee, for the appellees, Nashville General Hospital at Meharry and Judy Corfman, NP.

Robert L. Trentham and Kevin C. Baltz, Nashville, Tennessee, for the appellee, Patrick Griffith, M.D.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Magdi Mikheil was evaluated by neurologist Dr. Noel Lim in April 2005 for right-sided facial numbness and tingling with associated weakness in the right arm. Dr. Lim admitted Mr. Mikheil for observation at Summit Medical Center. He identified cervical stenosis as a possible cause of Mr. Mikheil's condition.

On June 27, 2005, Mr. Mikheil was examined by Dr. Thomas Limbird, an orthopedic surgeon at Nashville General Hospital at Meharry ("Meharry"), who previously treated him for knee pain. Mr. Mikheil reported left knee pain with movement. Dr. Limbard referred him to Nurse Practitioner Judy Corfman in the neurology clinic at Meharry. Mr. Mikheil was first seen by Nurse Practitioner Corfman at the neurology clinic on July 12, 2005. Over the course of several more months, Mr. Mikheil attended additional appointments with Nurse Practitioner Corfman, with the last appointment being on February 22, 2006. At that point, she referred him to Dr. Patrick Griffith.

On July 18, 2005, Mr. Mikheil was seen by Dr. Tarek Elalayli, an orthopedic surgeon, for complaints of neck and right arm pain. Dr. Elalayli examined Mr. Mikheil, took an x-ray of his head and neck, and recommended that an MRI of his entire spine be performed. Because Mr. Mikheil had TennCare insurance, which Dr. Elalayli did not accept, Dr. Elalayli recommended that he follow up with Dr. Limbird.

Dr. Griffith, a neurologist, first saw Mr. Mikheil on March 30, 2006 at Meharry for complaints of left knee pain, constant burning into the left calf, foot and knee, right hand spasms, shoulder pain, and a reduced ability to walk. Dr. Griffith ordered on MRI of the neck on November 15, 2006. Based upon the MRI, performed on November 20, 2006, Mr. Mikheil was diagnosed with severe cervical stenosis with myelopathy.

On December 11, 2006, Mr. Mikheil returned to Dr. Elalayli, who performed surgery on December 16, 2006. The procedure was an anterior cervical discectomy and cervical fusion at C3-4, C4-5, and C5-6. Dr. Elalayli performed a second decompression surgery on February 2, 2007.

Mr. Mikheil and his wife, Salwa Gerges, ("the plaintiffs") filed this suit against

---

[1]Because the trial court decided this case at the summary judgment stage, we base our summary of the facts on the undisputed facts admitted by the parties.

Meharry, Dr. Limbard,[2] Nurse Practitioner Corfman, and Dr. Griffith on October 19, 2007. The complaint alleges that Dr. Limbard, Nurse Practitioner Corfman, and Dr. Griffith were negligent and deviated from the medically recognized standard of care in their field of medicine and failed to properly diagnose and treat Mr. Mikheil. As to Meharry, the complaint asserts vicarious liability based upon the claims made against Dr. Limbard.

The parties entered into an agreed scheduling order on September 24, 2008, which gave the plaintiffs until July 1, 2009 to submit their Rule 26 expert witness disclosures.[3] The day after this deadline, the plaintiffs filed a motion requesting an additional 120 days. On July 28, 2009, the parties entered into another agreed scheduling order that included a new deadline for the disclosure of expert witnesses of November 1, 2009. On October 30, 2009, the plaintiffs submitted their Rule 26 Expert Disclosure and Statement. The disclosure listed Dr. James Melisi, Dr. Noel Lim, Jane Colvin-Roberson, and John R. Moore as the plaintiffs' experts. The disclosure stated that "Jane Colvin-Roberson will be called as a life care planner expert," that she would be provided with all relevant medical records, and that the plaintiffs would "furnish a copy of the Life Care Plan when it is completed."

On November 20, 2009, Dr. Limbird filed a motion to strike the plaintiffs' Rule 26 designation of experts. Dr. Limbird argued that the plaintiffs failed to comply with Tenn. R. Civ. P. 26.02(4) because they did not provide the substance of the facts and opinions to which the experts were expected to testify or a summary of the grounds for each opinion. The other defendants joined in this motion. The motion was heard on December 11, 2009; counsel for the plaintiffs did not appear at the hearing. The court noted that, although the plaintiffs had agreed to provide the defendants with supplemental Rule 26 disclosures, they had failed to provide the defendants with a date by which they would do so. The court continued the motion until January 8, 2010 and stated, in an order entered on January 5, 2010: "If, by that date, Plaintiffs have not served full and complete Supplemental Rule 26 Disclosures, the Court will take the appropriate action."

The plaintiffs served their supplemental Rule 26 expert disclosure and statement on January 7, 2010. In this supplemental disclosure, the plaintiffs no longer listed Ms. Colvin-Roberson as an expert; rather, they designated Laura Lampton, R.N., as their life care planning expert and submitted a life care plan prepared by Nurse Lampton. At the hearing on January 8, 2010, the trial court again considered the defendants' motion to strike. The court continued the motion until January 15, 2010 to give the defendants time to review the

---

[2] Dr. Limbard is not involved in this appeal.

[3] Tennessee Rule of Civil Procedure 26.02(4) addresses the "[d]iscovery of facts known and opinions held by experts."

supplemental disclosures and determine if they satisfied Rule 26 and the requirements of the January 5, 2010 order and cured the defects raised in the motion. The court determined that the plaintiffs' disclosure of Nurse Lampton was not timely and that they did not seek and were not given leave of court to substitute her for Ms. Colvin-Roberson. Therefore, the court struck her as an expert witness and struck the life care plan she prepared. In its order entered on January 28, 2010, the court stated, "Defendants' Motion to Strike is partially well-taken and due to be partially granted." Furthermore, the plaintiffs "shall be prohibited from offering into evidence, at the trial of this matter, any life care plan and any life care planning testimony."

On January 20, 2010, the plaintiffs filed a motion to amend their Rule 26 disclosure to strike Ms. Colvin-Roberson and add Nurse Lampton as a life care planning expert. At a hearing on January 22, 2010, the trial court further considered Dr. Limbird's motion to strike the plaintiffs' Rule 26 designation of expert witnesses and concluded that the motion should be granted. The court ruled that Dr. Lim's testimony would be limited to his role as a treating physician. Nurse Lampton's testimony and life care plan and any other witness testimony based thereon were stricken. The court gave the defendants a deadline of April 15, 2010 for submitting their expert witness disclosures.

On July 13, 2010, the trial court entered an agreed scheduling order setting the case for trial on January 10, 2011 and stating that all expert discovery depositions would be completed by October 15, 2010. On September 30, 2010, Dr. Griffith requested a scheduling conference to review the deadline for expert witness depositions and to discuss a conflict with the scheduled trial date. The motion detailed difficulties scheduling the deposition of Dr. James Melisi, the plaintiffs' only standard of care expert.

The plaintiffs submitted their second supplemental Rule 26 disclosures on November 20, 2010. Dr. Melisi's deposition was set for November 17, 2010, but was cancelled by plaintiffs' counsel on November 15, 2010 due to a scheduling conflict. The January 10, 2011 trial date was continued.

On February 21, 2012, the case was transferred from the Third Circuit Court to the First Circuit Court for Davidson County. Immediately thereafter, the plaintiffs filed a motion to allow a fourth supplemental Rule 26 expert disclosure to add three new witnesses: Laura Lampton, R.N., life care planner; Barbara Bishop, PA-C; and Dr. Louis T. Giron, Jr., a neurologist. The matter was heard on May 4, 2012 and, in an order entered on May 14, 2012, the trial court denied the plaintiffs' motion. The plaintiffs then sought leave of court to file an interlocutory appeal, which was granted by the trial court. This Court, however, denied the plaintiffs' application for an interlocutory appeal.

4

The parties entered into a fourth agreed scheduling order on February 26, 2013, which required that expert witness depositions be completed by March 31, 2014. On May 2, 2013, the trial court entered an order setting the trial for October 20, 2014.

On February 20, 2014, the defendants moved to strike the plaintiffs' Rule 26 expert, Dr. Melisi, on the grounds that the plaintiffs had repeatedly failed to timely provide deposition dates for their expert in accordance with the February 2013 scheduling order and the court's instructions at the case management conference. The matter was heard on March 7, 2014. In its March 26, 2014 order, the trial court found the motion to be well taken "in that the Court acknowledges the Plaintiffs' failure to ensure the orderly progression of this case by timely providing deposition dates for Dr. Melisi." The court was not, however, inclined to grant the motion "at this time." The trial court ordered the plaintiffs to provide the defendants with deposition dates for Dr. Melisi within two weeks of the hearing. There would be a pre-trial conference on March 28, 2014. The court further awarded the defendants $1000 in attorney fees.

Dr. Melisi's deposition was finally scheduled for June 4, 2014 in Santa Fe, New Mexico. The defendants' notice of deposition requested that Dr. Melisi bring to the deposition a number of documents, including his case file, the records he reviewed to form his opinions, and a list of all litigation matters in which he had been engaged. The plaintiffs' counsel did not attend the deposition, and Dr. Melisi disavowed receiving a copy of the notice of deposition with this list of documents. He did not bring his case file or any of the other requested documents to the deposition.

On July 30, 2014, Dr. Limbird filed a motion for summary judgment arguing that there was no genuine issue of material fact. He asserted that Dr. Melisi conceded in his deposition that Dr. Limbird "did the right thing." On September 5, 2014, the trial court granted Dr. Limbird's motion for summary judgment.

Defendants Meharry and Nurse Practitioner Corfman, on August 13, 2014, filed a motion to strike the plaintiffs' Rule 26 expert based on the plaintiffs' violation of court orders to "permit an adequate, timely, and thorough deposition of their Rule 26 witness, Dr. James Melisi." On September 10, 2014, the trial court granted in part, denied in part, and reserved ruling in part on the defendants' motion to strike the plaintiffs' expert witness. The trial court found:

[T]he Plaintiffs' Rule 26 witness, Dr. James Melisi, did not provide the materials that were necessary and properly requested by the Defendants during his June 4, 2014 deposition. The testimony and opinions of Dr. Melisi shall be limited at trial to those contained in his initial Rule 26 disclosure. The

5

> Plaintiffs are ordered to supplement Dr. Melisi's deposition by providing to the Defendants no later than September 8, 2014, the materials listed in Exhibit A of the April 22, 2014 Notice of Deposition.

Meharry and Nurse Practitioner Corfman moved for summary judgment on September 12, 2014.

The plaintiffs failed to produce any additional documents by September 8, 2014. On September 19, 2014, the trial court heard the defendants Meharry and Corfman's motion for summary judgment and motion to strike Dr. Melisi as the plaintiffs' Rule 26 expert. The court emphasized that Dr. Melisi "testified in his deposition that he is not an expert on the standard of professional practice as it applies to nurse practitioners in Nashville, Tennessee." The trial court therefore found that he was "not competent to testify as an expert witness relevant to nurse practitioners and, specifically, Judy Corfman." Another reason the trial court granted the motion as to Nurse Practitioner Corfman was that the plaintiffs failed to submit a response to the defendants' motion for summary judgment. Because the claims against Meharry were all based upon vicarious liability for Dr. Limbird's alleged negligence and because the claims against Dr. Limbird had already been dismissed, the trial court granted the motion for summary judgment in favor of Meharry.

Addressing the motion to strike Dr. Melisi as a Rule 26 expert, the trial court concluded: The plaintiffs' "consistent noncompliance with this Court's Orders, coupled with Plaintiff's failure to file a Response to this motion, warrants the exclusion of Dr. Melisi as an expert witness in this matter." The trial court granted the defendants' motion to strike and the motion for summary judgment in favor of Nurse Practitioner Corfman. On October 28, 2014, the trial court entered an order granting a motion to dismiss all claims against Dr. Griffith based upon the absence of a medical expert. This appeal followed.

<u>Issues on appeal</u>

The plaintiffs raise the following issues on appeal:

1. Whether the trial court abused its discretion when it initially struck the plaintiffs' life care planner and then denied the plaintiffs' motion to alter or amend.
2. Whether, following the transfer of the case to a new circuit court, the trial court abused its discretion in refusing to permit the plaintiffs' to disclose expert witnesses essential to their case, including a life care planner, a nurse practitioner, and a neurologist.
3. Whether the trial court erred in granting summary judgment in favor of defendants Meharry and Nurse Practitioner Corfman on the grounds that Dr. Melisi was

"unreliable and noncompliant with the statutory requirements" concerning whether this nurse practitioner violated the standard of care.

4. Whether the trial court erred in striking the plaintiffs' sole standard of care expert witness, Dr. Melisi.
5. Whether the trial court erred in granting summary judgment in favor of defendant Dr. Griffith.

## ANALYSIS

The plaintiffs' first two issues have to do with the trial court's exclusion of expert witness testimony. Such decisions are subject to review under an abuse of discretion standard. *Excel Polymers, LLC v. Broyles*, 302 S.W.3d 268, 272 (Tenn. 2009); *Mayo v. Shine*, 392 S.W.3d 61, 70-71 (Tenn. Ct. App. 2012). Under the deferential abuse of discretion standard, we must review a trial court's discretionary decision to determine:

> (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citing *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Serv. Constr. Co.*, *Inc.,* No. 87-136-II, 1988 WL 72409, at *1-3 (Tenn. Ct. App. July 13, 1988))).

### (1)

In their first issue, the plaintiffs challenge the decision of the trial court to exclude their expert life care planner in an order entered on January 28, 2010.[4] At that point, the plaintiffs had been given time to file a supplemental Rule 26 disclosure providing the information missing from their initial disclosure, which was to include "information about the substance of the facts and opinions to which Plaintiffs' life care planning expert [was] expected to testify, a summary of the grounds for each opinion, and a life care plan."

In its January 28 order, the trial court noted that the plaintiffs' supplemental disclosure

---

[4] The plaintiffs also challenge the trial court's action in denying their motion to alter or amend, but they have identified no basis for reversing the trial court's decision on this motion, and we find none.

did not include a life care plan prepared by Ms. Colvin-Roberson or the remaining information to be provided concerning her proposed testimony. Rather, the plaintiffs "disclosed an entirely new life care planning expert," Nurse Lampton, for whom they did provide a life care plan. The court found that the disclosure of Nurse Lampton was not timely and that the plaintiffs had failed to seek leave of court to substitute her for Ms. Colvin-Roberson. The trial court ruled that Nurse Lampton and the life care plan she had prepared were stricken. The trial court further determined that the plaintiffs' substitution of another life care expert rather that submission of a life care plan for Ms. Colvin-Roberson constituted a "failure to serve a full, complete, supplemental disclosure of Ms. Colvin-Roberson's opinions" and that the plaintiffs had thereby "failed to comply with this Court's January 5, 2010 Order." The trial court therefore ordered Ms. Colvin-Roberson to be stricken as an expert witness. Moreover, the trial court stated: "Plaintiffs shall be prohibited from offering into evidence, at the trial of this matter, any life care plan and any life care planning testimony."

Several Tennessee Rules of Civil Procedure come into play here. Rule 26.02(4)(A)(i) of the Tennessee Rules of Civil Procedure provides:

> A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. In addition, upon request in an interrogatory, for each person so identified, the party shall disclose the witness's qualifications (including a list of all publications authored in the previous ten years), a list of all other cases in which, during the previous four years, the witness testified as an expert, and a statement of the compensation to be paid for the study and testimony in the case.

The information requested by the defendants was consistent with this rule. Tennessee Rule of Civil Procedure 16.01 authorizes the trial court to conduct planning conferences and enter scheduling orders. The trial court gave the plaintiffs several extensions of time to provide the requested information and to comply with the court's orders. The initial deadline for the plaintiffs' Rule 26 disclosure was July 2009, then it was moved to November 2009, then January 2010.

Rule 37.02 of the Tennessee Rules of Civil Procedure authorizes a trial court to impose penalties for violation of pretrial procedures contained in Rules 26 through 36. Under Tenn. R. Civ. P. 37.02(B), a trial court is expressly authorized to enter an order "refusing to allow the disobedient party to support or oppose designated claims or defenses,

or prohibiting that party from introducing designated matters in evidence." *See also* TENN. R. CIV. P. 37.03(1) (providing that "[a] party who without substantial justification fails to supplement or amend responses to discovery requests as required by Rule 26.05 is not permitted, unless such failure is harmless, to use as evidence at trial" any witness or information not disclosed).

The plaintiffs emphasize that the trial court's order prohibiting them from having any life care planning expert had a devastating effect on their ability to prove damages. They rely on caselaw stating that "[e]xclusion is proper only if the [Rule 26] disclosures failed to give the opposing side reasonable notice of the opinions such that, without exclusion, there would be unfair surprise or trial by ambush." *Watkins v. Affiliated Internists, P.C.*, No. M2008-01205-COA-R3-CV, 2009 WL 5173716, at *20 (Tenn. Ct. App. Dec. 29, 2009); *see also Stanfield v. Neblett*, 339 S.W.3d 22, 30 (Tenn. Ct. App. 2010). These cases are decided pursuant to Tenn. R. Civ. P. 37.03, and they concern the issue of whether the Rule 26 disclosure sufficiently put the other party on notice of the content of the experts' testimony. *Stanfield*, 339 S.W.3d at 30; *Watkins*, 2009 WL 5173716, at *18. The issue in the present case is the plaintiffs' failure to provide the required information regarding Ms. Colvin-Roberson and the plaintiffs' disclosure instead of another life care planner and all of the required information regarding the new life care planner. Thus, the sufficiency of the notice provided by the plaintiffs' disclosure is not the issue here, and the cases cited by the plaintiffs are not on point. The trial court excluded Nurse Lampton and her life care plan because her disclosure as an expert was not timely and the plaintiffs had not sought leave of court to add her as an expert. The trial court excluded Ms. Colvin-Roberson as an expert because the plaintiffs failed to submit a full and complete supplemental disclosure and were therefore in violation of the court's orders.

We find no abuse of discretion in the trial court's actions in granting the defendants' motion to strike the plaintiffs' expert life care planner and denying the plaintiffs' motion to alter or amend. The trial court identified the factual basis for its decision in its order, and the court acted within its authority under Tenn. R. Civ. P. 37.02 and 37.03 in ruling that the plaintiffs would have no life care planning expert at trial.

(2)

The plaintiffs next argue that, after the case was transferred to a different circuit court, and thus a different judge, the trial court abused its discretion in refusing to permit the plaintiffs to disclose expert witnesses essential to their case, including a life care planner, a nurse practitioner, and a neurologist.

The plaintiffs made their Motion to Allow Fourth Supplemental Rule 26 Expert

9

Disclosure and Statement to the new circuit court judge on February 27, 2012. It is important to consider the posture of the case at this point. The trial court entered its order ruling that the plaintiffs would have no life care expert on January 28, 2010. The court gave the defendants a deadline of April 15, 2010 to file their Rule 26 expert witness disclosures. In a third scheduling order entered on July 13, 2010, the trial court stated that all parties had disclosed their Rule 26 witnesses. In February 2012, the parties were engaged in depositions. In fact, they were beyond the original deadline set by the trial court for completing depositions (October 15, 2010). Adding more expert witnesses would have caused delay and expense and required the defendants to engage in additional pretrial discovery.

The plaintiffs emphasize remarks made by the trial court at the hearing on the plaintiffs' motion for an interlocutory appeal after the court denied their motion. The important language, however, is that which appears in the court's order denying the plaintiffs' motion to allow a supplemental Rule 26 expert disclosure. In its order, entered on May 14, 2012, the court stated:

> Based upon the Plaintiffs' Motion, the Responses filed by the Defendants, the arguments of counsel, and the entire record in this cause, the Court finds that Plaintiffs' Motion is not well taken and should be denied.[5]

There is nothing in the language of this order to support the plaintiffs' contention that the trial court "felt compelled to follow his predecessor, Judge Haynes."

The language relied upon by the plaintiffs appears in the transcript from the hearing (which was incorporated into the order) granting the plaintiffs' motion for permission to file an interlocutory appeal concerning the trial court's order denying their motion to allow a fourth supplemental Rule 26 expert disclosure.[6] That order is not on appeal here. The court's May 14, 2012 order states the basis upon which the trial court made its decision, and we find that the trial court did not abuse its discretion in entering that order.

(3)

The plaintiffs next argue that the trial court should not have awarded summary judgment in favor of Meharry and Nurse Practitioner Corfman on September 23, 2014. In

---

[5] The record on appeal does not include a transcript of this hearing.

[6] The trial court stated, as to its decision not to allow the plaintiffs to use either life care expert: "Had it been in my Court, I may have or may not have done something differently, but the question for the Court is whether she abused the discretion. . . . It arose she did not abuse her discretion, so I grant the appeal."

10

particular, they assert that the trial court erred in ruling that the plaintiffs' only standard of care expert, Dr. Melisi, was "unreliable and noncompliant with the statutory requirements" of Tenn. Code Ann. § 29-26-115.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. TENN. R. CIV. P. 56.04. A trial court's award of summary judgment does not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). We consider the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether any factual disputes exist. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, ___ S.W.3d ___ , 2015 WL 6457768, at *22 (Tenn. Oct. 26, 2015); *Byrd*, 847 S.W.2d at 211. The moving party who does not bear the burden of proof at trial "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye*, 2015 WL 6457768, at *22.

In its September 23, 2014 order, the trial court awarded summary judgment in favor of the hospital on the ground that the court granted summary judgment against Dr. Limbird on September 5, 2014 and the hospital's vicarious liability was predicated entirely upon the claims against Dr. Limbird. Although they mention Meharry in the statement of their argument, the plaintiffs have not made any argument challenging the trial court's decision regarding the grant of summary judgment to the hospital.

The main argument put forth by the plaintiffs is that the trial court erred in granting summary judgment in favor of Nurse Practitioner Corfman because it found Dr. Melisi was not qualified to testify to the standard of care for a nurse practitioner. Questions regarding the admissibility, qualifications, relevancy, and competency of expert testimony are reviewed under the abuse of discretion standard. *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997). In health care liability actions, an expert witness must satisfy the requirements of Tenn. Code Ann. § 29-26-115(b),[7] which are designed to ensure that the witness is

---

[7] Tennessee Code Annotated section 29-26-115(b) provides that no person shall be competent to testify to establish the facts that must be established under subsection (a) "unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of

competent to provide testimony regarding the facts that must be established to prove a defendant's negligence pursuant to Tenn. Code Ann. § 29-26-115(a). These facts include the standard of care,[8] a failure to act in accordance with the standard of care, and proximate cause. Tenn. Code Ann. § 29-26-115(a).

The trial court determined that "Dr. Melisi's testimony as it relates to the standard of care applicable to Judy Corfman, NP, is unreliable and noncompliant with the statutory requirements of Tennessee Code Annotated 29-26-115." The trial court specifically found that Dr. Melisi admitted in his testimony that "he has never worked with nor supervised nurse practitioners." Furthermore, the court stated, Dr. Melisi "testified in his deposition that he is not an expert on the standard of professional practice as it applies to nurse practitioners in Nashville, Tennessee." These findings are supported by Dr. Melisi's deposition testimony, which includes the following excerpts:

- Q. And in 2004 and 2005, how many Nurse Practitioners did you supervise?
  A. None.
  Q. When is the last time you supervised a Nurse Practitioner?
  A. We don't have Nurse Practitioners in our practice.
- A. A Nurse Practitioner is a nurse who has additional training beyond nursing school to treat and evaluate patients. I am not a nurse and I never went to nursing school or Nurse Practitioner school. So I do not pretend to know any more of the nuances than that.
  Q. Are they treated the same as physicians in Tennessee?
  A. Well, I don't know exactly if you're asking me how they're treated. The short answer is that, you know, from a professional standpoint, sure, they're treated the same way. You mean do they—are they recognized that they have the same educational background?
  Q. Right.
  A. No, of course not. They don't go to medical school so they don't have the same educational background. But they are not merely nurses either. They do practice in a setting where they examine patients, make diagnoses, and are capable as a result of their training to order appropriate tests and treat patients.
- Q. All right. And do you consider yourself familiar with the standard of professional

these states during the year preceding the date that the alleged injury or wrongful act occurred."

[8] Tennessee Code Annotated section 29-26-115(a)(1) defines the relevant standard of care as: "The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred."

practice as it applies to Nurse Practitioners in Nashville, Tennessee?
A. I'm not an expert in that, no.

In an attempt to provide countervailing evidence, the plaintiffs cite the following testimony by Dr. Melisi:

- Q. . . . So I understand that what you just said is that on July 19th you will give Nurse Practitioner Corfman a [bye] in not ordering the MRI that day; is that correct?
  A. That's only because my opinions haven't changed. You've asked me that several times. My opinions are that, had the MRI been ordered earlier, and the earlier the better in this case, his outcome would have been better more likely than not. If you don't order it on the 19th, you order it on the 26th of July. But you don't wait until November of the next year to do the MRI like was finally done in this case. So it does not change my opinion that there was a deviation from the standard of care. And I think you're splitting hairs quite frankly, you know, based on the date. Because I've already said that there is no exact date where a difference would have been made. The earlier the better.
  Q. Well, Doctor, you're here to testify that healthcare providers deviated from the standard of care and caused an injury to someone. I want to know the basis of those opinions. And if I'm splitting hairs, so be it. But I need to know the basis of all of your opinions so that I can evaluate your opinions in this case.
  A. The basis of my opinion is based on my experience treating patients with cervical cord stenosis. It is a surgical disease. It is not a medical disease. That means that it is not treated by any medications or therapy or chiropractic treatment. It is a surgical disease that needs to be addressed with surgery. And the sooner you do the surgery, the better, period.
- Q. All right. Do you have an opinion and what is the basis of that opinion that she [Nurse Practitioner Corfman] deviated on July 19th, 2005? . . . So I need to know, what is the basis of your opinion of July 19th, 2005?
  A. The basis of my opinion is that she didn't order an MRI. And the patient needed an MRI.
  Q. And what told her that the patient needed an MRI?
  A. The patient came in weak in both arms and both legs. While I can't specifically attest to that medical record right now, it was clear to everybody taking care of him that he was getting progressively weaker in his arms and legs. And that's the basis of my opinion including my experience in treating these patients.

We disagree with the plaintiffs' assertion that the preceding testimony somehow establishes Dr. Melisi's competence to testify concerning the relevant standard of care. The case of *Cox v. M.A. Primary & Urgent Care Clinic*, 313 S.W.3d 240 (Tenn. 2010), is

13

instructive here.  In *Cox*, the plaintiff, Michelle Cox, saw a physician assistant ("PA") at the Primary and Urgent Care Clinic ("the clinic") multiple times from September 25, 2003 through June 8, 2004.  *Cox*, 313 S.W.3d at 245. At her last visit, the PA referred Ms. Cox to a pulmonologist.  *Id.* at 244.  Later in June 2004, Ms. Cox sought treatment at a hospital and was diagnosed with cardiomyopathy; she had a mitral valve repair and, ultimately, mitral valve replacement surgery.  *Id.*  Ms. Cox sued the primary care physician who supervised the PA and the clinic based upon the PA's alleged negligence in failing to diagnose the plaintiff's cardiomyopathy.  *Id.* at 243.  The defendants moved for summary judgment.  *Id.*  Ms. Cox relied upon the deposition testimony of a single expert witness, a cardiologist, who admitted that "he had never worked with physician assistants; did not know 'the responsibility of the supervising physician with respect to his duties toward a physician assistant'; and was 'not in a position' to testify about the 'standard of acceptable professional practice of a physician assistant.'"  *Id.* at 247.  The expert opined that the PA's services to Ms. Cox "fell 'outside' the standard of care applicable to a primary care physician."  *Id.*  The trial court granted the defendants' motion for summary judgment.  *Id.*  This Court reversed the trial court on the ground that the standard of care applicable to a PA was the same as that of his or her supervising physician.  *Id.*

The Supreme Court in *Cox* held that "a physician assistant must be held to 'the recognized standard of acceptable professional practice in the profession' of physician assistants and any specialty thereof, and not to a standard applied to physicians."  *Id.* at 258.  Applying this holding to the facts at hand, the Court cited the cardiologist's testimony concerning his lack of familiarity with physician assistants and the standard of care applicable to them.  *Id.* at 261.  The Court determined that the trial court did not abuse its discretion in determining that the expert witness "was not competent to testify about the standard of care actually applicable to [the PA]."  *Id.*

In the present case, as in *Cox*, the expert witness's testimony establishes his lack of familiarity with the standard of care applicable to nurse practitioners.  Dr. Melisi testified that he did not practice with nurse practitioners, was not familiar with their educational backgrounds, and was not familiar with the standard of care applicable to nurse practitioners.  The testimony cited by the plaintiffs is based upon the standard of care for neurosurgeons, not the standard of care for nurse practitioners.

Another reason the trial court gave for granting summary judgment was that the plaintiffs "failed to file a Response to the motion" for summary judgment.  The plaintiffs also did not appear at the hearing.  Rule 56.06 of the Tennessee Rules of Civil Procedure provides that summary judgment, if appropriate, shall be entered against an adverse party who fails to respond to a properly supported motion for summary judgment.  This is an additional ground in support of the trial court's ruling granting summary judgment in favor of Nurse

14

Practitioner Corfman.

The trial court did not err in granting summary judgment to Nurse Practitioner Corfman based upon Dr. Melisi's lack of competence to provide expert testimony regarding the standard of care applicable to nurse practitioners.

(4)

The plaintiffs next assert that the trial court erred, in its order entered on September 23, 2014, in excluding Dr. Melisi as an expert witness because of his failure to produce certain documents requested by the defendants in their deposition notice.

As detailed above, Dr. Melisi failed to bring the documents requested in the notice of deposition to the deposition. Even after the deposition, when the trial court gave the plaintiffs until September 8, 2014 to provide the documents requested in the notice of deposition, the plaintiffs did not produce any additional documents. On September 23, 2014, the trial court ruled as follows:

> The Court finds that the defendants were prejudiced in that they were not able to conduct an adequate and thorough deposition of Dr. Melisi due to his failure to bring with him the documents requested by the defendants in Exhibit A of the Notice of Deposition, which include documents to which he referred and upon which he relied in formulating his expert opinion. The Court further finds that Plaintiff's consistent noncompliance with this Court's Orders, coupled with Plaintiff's failure to file a Response to this motion, warrants the exclusion of Dr. Melisi as an expert witness in this matter. Therefore, the Court finds that Defendants' Motion to Strike Dr. Melisi as a Rule 26 expert is well taken and should be granted.

Tennessee Rule of Civil Procedure 37.02 gives the trial court broad authority to impose sanctions upon a party who fails to comply with court orders or permit discovery. The authority to exclude evidence has been held to include "an order precluding an expert from testifying." *Laseter v. Regan*, No. W2013-02105-COA-R3-CV, 2014 WL 3698248, at *21 (Tenn. Ct. App. July 24, 2014). Moreover, apart from Rule 37.02, our Supreme Court has held that "the inherent power of trial judges permits the trial judge to take appropriate corrective action against a party for discovery abuse." *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988).

We find no error in the trial court's decision to exclude Dr. Melisi as a Rule 26 expert witness. As discussed above, the plaintiffs failed to respond to the defendants' motion to

strike Dr. Melisi. Furthermore, the trial court had a factual and legal basis for its sanctions: the plaintiffs repeatedly violated the court's orders, and the court found that the defendants had been prejudiced by being unable "to conduct an adequate and thorough deposition."[9]

(5)

The plaintiffs' final argument is that the trial court erred in granting summary judgment in favor of Dr. Griffith. Because of the trial court court's exclusion of Dr. Melisi as an expert witness, a decision that we have found not to be an abuse of the trial court's discretion, the plaintiffs had no expert evidence to establish the standard of care for Dr. Griffith, its breach, and causation, as required under Tenn. Code Ann. § 29-26-115. Accordingly, the trial court properly dismissed the plaintiffs' claims against Dr. Griffith.

CONCLUSION

The judgment of the trial court is affirmed in all respects. Costs of appeal are assessed against the appellants, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[9] The plaintiffs argue that two local rules of court, Davidson County Local Rules of Practice §§ 22.08 and 22.11, apply here. We disagree. Rule 22.11 provides that "[a]greements to furnish exhibits made during the taking of depositions *may* be enforced by motion made pursuant to Tenn. R. Civil P. 37 and/or Rule 22.09 of these rules." 20th DIST. LOCAL R. 22.11 (emphasis added). Because the language of this rule is permissive, not mandatory, the trial court was not required to follow it. Rule 22.08 provides:

> The court will refuse to rule on any motion related to discovery unless moving counsel files with the motion, a statement which certifies that the lawyer has conferred with opposing counsel in a good faith effort to resolve the discovery dispute and that the effort has not been successful.

20th DIST. LOCAL R. 22.08. As counsel for the defendants pointed out at the hearing on August 29, 2014, their motion to strike was not a "motion related to discovery" in the sense of trying to resolve a discovery dispute; rather, their motion was an effort to seek relief for the plaintiffs' repeated violation of the court's orders regarding discovery. It should be noted again that, at the hearing on September 19, 2014, the final hearing on the defendants' motion to strike and motion for summary judgment, the plaintiffs made no response (written or oral) to the defendants' motion to strike or motion for summary judgment as to Nurse Practitioner Corfman or Meharry. There was an attorney to oppose the motion for summary judgment with respect to Dr. Griffith on behalf of the plaintiffs.